UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GP&W, INC., d/b/a, ) | |
| CENTER OIL COMPANY ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV00404 ERW |
| ) | |
| INTERNATIONAL EXCHANGE, ) | |
| SERVICES, LLC ) | |
|     Defendant. ) | |

# **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant International Exchange Services LLC's Motion to Dismiss or to Stay the Proceedings [ECF No. 8].

## I. BACKGROUND

This litigation arises from a contract for the sale of Renewable Identification Numbers ("RINs"). Plaintiff, GP&W, Inc., d/b/a Center Oil Company, filed this action claiming breach of contract and breach of express and implied warranties. Plaintiff requests specific performance of the contract by replacement of invalid RINs. Defendant petitions the Court to dismiss this case for failure to state a claim, failure to join a required party, and in the alternative, to stay the proceedings.

### *A. Regulatory Background*

"In 2005, Congress amended section 211 of the Clean Air Act that authorizes [the U.S. Environmental Protection Agency ("EPA") ] to regulate fuel and fuel additives to establish a renewable fuel program." *Nat'l Petrochemical & Refiners Ass'n v. EPA,* 630 F.3d 145, 147 (D.C. Cir. 2010) (citing Pub. L. No. 109–58, § 1501, 119 Stat. 594 (codified at 42 U.S.C. § 7545(o))). Under this act, "obligated parties—refiners, importers, and certain blenders of gasoline—had to

show that they had introduced a required volume of renewable fuel into the domestic gasoline pool each year." *Id.* at 148. In 2007, the EPA published regulations detailing how to meet this renewable volume obligation ("RVO"). Regulation of Fuels and Fuel Additives: Renewable Fuel Standard Program, 72 Fed.Reg. 23,900 (May 1, 2007). To facilitate compliance, the EPA adopted a system of RINs for reporting purposes. *Id.* at 23,908–10.[1] "Thus, obligated parties would demonstrate their compliance with the annual volume standard by acquiring RINs for each gallon of renewable fuel, which would be assigned to batches of renewable fuel produced [in] or imported into the United States, with different fuels carrying different values based on the energy content relative to ethanol." *Nat'l Petrochemical,* 630 F.3d at 148. *See* 72 Fed. Reg. at 23,909.

An active secondary market exists for the purchase and sale of RINs that obligated parties use to meet their RVOs. *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *1 (S.D. Tex. Aug. 20, 2012). A RIN can be separated from a volume of renewable fuel. 40 C.F.R. §80.1429(a). When an obligated party has satisfied its annual quota, it can sell the excess RINs to other obligated parties. 40 C.F.R. § 80.1428(b). This credit system was required by Congress. 42 U.S.C. § 7545(o)(5). Separated RINs can be transferred any number of times. 40 C.F.R. § 80.1428(b)(3). It is a violation to generate a RIN for which the applicable renewable fuel volume was not produced. 40 C.F.R. § 80.1460(b)(1). Furthermore, no person may create or transfer an invalid RIN. *Id. subs.* (b)(2). Invalid RINs cannot satisfy an obligated party's RVO even if acquired in good faith. 40 C.F.R. § 80.1431(b)(2). If a person transfers an invalid RIN under 40 C.F.R. § 80.1460(b)(1), the person will incur liabilities under 40 C.F.R. § 80.1461 and be subject to civil penalties under 40 C.F.R. § 80.1463.

---

[1] A RIN is a 38-character numerical code that is generated by the producer or importer of renewable fuel that represents a gallon of renewable fuel produced or imported in the United States. [ECF No. 5].

*B. Factual Background* [2]

Plaintiff is a corporation organized in Missouri with its principal place of business in Missouri. Plaintiff engages in the business of purchasing, marketing, and distributing fuels and energy products. Defendant is a limited liability company duly organized and existing under the laws of the state of Delaware with its principal place of business in Florida.

In April, 2010, the parties entered into an agreement ("the Contract"), pursuant to which Plaintiff was to purchase RINs from Defendant. The Contract was entered into and performed in the state of Missouri.[3] Plaintiff alleges that the Contract specifically provided that the RINs were generated and purchased in compliance with 40 C.F.R. Part 80 (the "Renewable Fuel Standard"). Plaintiff also claims that the Contract provided that Defendant had marketable title and the right to sell and transfer the RINs. Defendant delivered the RINs to Plaintiff who paid the purchase price. Plaintiff sold the RINs to other buyers. Plaintiff subsequently learned that 943,515 of the purchased RINs were generated by Clean Green Fuels ("CGF"), and were fraudulently created and invalid.

Count I of the Plaintiff's Complaint alleges that while Plaintiff has fully performed under the terms of the Contract, Defendant breached the agreement by its failure to deliver the agreed upon valid RINs. Plaintiff claims damages in excess of the jurisdictional amount due to Defendant's breach. Count II alleges that Defendant breached express contractual warranties, express warranties under the Missouri Uniform Commercial Code ("UCC"), and the UCC

---

[2]For purposes of this Motion to Dismiss, the facts alleged by Plaintiff in its complaint [ECF No. 5] are taken as true.

[3]The parties do not dispute that the substantive law of Missouri governs the action.

implied warranties of fitness for a particular purpose and merchantability.[4] Count III requests that the Court order the Defendant to specifically perform the Contract by replacing the invalid RINs.

## II. STANDARD

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give a short and plain statement "plausibly suggesting . . . that the pleader is entitled to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007). Under this standard, a claim is facially plausible where "the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (internal citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citations omitted). That said, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal alterations and citations omitted). Thus, application of this standard suggests a two-step analysis under which the court may first (1) determine whether there are factual allegations in the complaint sufficient to entitle the plaintiff to "the assumption of truth," and if so, (2) "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

---

[4]Plaintiff enumerates the following express warranties under the UCC: RINs were properly generated and purchased under the Renewable Fuel Standard; Defendant had the right to transfer RINs; and Defendant had good and marketable title to the RINs. Note that Plaintiff contends Defendant made express contractual warranties as well as express warranties under the UCC.

A Rule 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir. 1994) ( internal citations omitted). "When ruling on a motion to dismiss under Rules 12(b)(6) ... , a district court generally may not consider materials outside the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F.3d 978, 982 (8th Cir. 2008) (internal citations omitted). "It may, however, consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" *Id.* (internal citations omitted).

## III. DISCUSSION

Defendant argues that Plaintiff's breach of contract claims must be dismissed because (1) the RINs were delivered as promised and EPA regulations make it clear that the risk of loss is borne by the buyer; (2) the validity or invalidity of the RINs has not yet been determined;[5] and (3) Plaintiff can demonstrate no legally cognizable non-speculative damages. Defendant also argues that Plaintiff's breach of express and implied warranty claims require dismissal as (1) Plaintiff can demonstrate no legally cognizable damages; and (2) Plaintiff's warranty claims arising under Article 2 of the Missouri Uniform Commercial Code ("UCC") must fail because RINs are not "goods" under the UCC, rendering it inapplicable. Defendant further maintains that

---

[5]In Defendant's Memorandum in Support of its Motion to Dismiss [ECF No. 9], Defendant states that the EPA has only made a preliminary determination (*see* EPA's Interim Enforcement Response Policy at ECF No. 12-3) that the RINs were invalid, and, as such, until a final determination has been made, the Contract has not been breached. Later, in the Defendant's Reply Memorandum [ECF No. 18], Defendant states that in light of the Supreme Court's decision in *Sackett v. EPA*, 132 S. Ct. 1367 (2012), the EPA's Interim Enforcement Response Policy amounts to a final word on the validity of the RINs. Defendant acknowledges that the invalidity argument is no longer a bar to the Plaintiff's claim, but requests dismissal on other grounds as noted above.

all claims must be dismissed as Plaintiff failed to join a required party, CGF. Alternatively, Defendant requests that the Court stay these proceedings.[6]

### A. Breach of Contract

A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Keveney v. Missouri Military Academy* 304 S.W.3d 98, 104 (Mo. 2010). Plaintiff's complaint alleges that the Defendant was contractually obliged to deliver valid and marketable RINs in compliance with the Renewable Fuel Standard. Plaintiff performed its part of the bargain by tendering the full purchase price for the RINs. Defendant failed to deliver RINs that conformed to the Contract as they were fraudulently created and invalid, damaging Plaintiff as a result. These allegations are sufficient to establish a reasonable inference that Defendant breached the Contract under the standards governing a Rule 12(b)(6) motion to dismiss.

Defendant argues that it satisfied its contractual duty when it delivered the RINs and that it made no express warranty concerning their validity. According to Defendant, this allegation dovetails with the EPA's "buyer beware" approach to purchasing RINs which "provides an important incentive for the regulated community to comply with the regulations and mandates

---

[6]Defendant initially requested the Court stay these proceedings until the resolution of criminal proceedings against Rodney Hailey, the former president and owner of CGF [ECF No. 9]. In Defendant's Motion to Supplement its Motion to Stay [ECF No. 12], the Court was asked to stay the instant proceedings pending the outcome of OceanConnect, LLC's suit against the EPA [ECF No. 12]. In Plaintiff's Notice of Intervening Disposition of Actions [ECF No. 22], Plaintiff gave notice to the Court that the Rodney Hailey criminal proceeding had concluded on June 25, 2012, and that OceanConnect, LLC, had voluntarily dismissed its suit against the EPA on or about July 25, 2012. Defendant's Response Notice [ECF No. 23] argues that although those two cases were no longer at issue, OceanConnect re-filed a "substantially similar action" (to the EPA action it voluntarily dismissed) in the U.S. Court of Appeals for the District of Columbia and the resolution of it goes to the heart of the Defendant's claims.

due diligence on the part of all RIN buyers."[7] Defendant maintains that the EPA expressly assigns the risk of loss in RIN transactions to the buyer as evidenced in the regulations themselves which bar invalid RINs from meeting an obligated party's RVO even when purchased in good faith.[8] However, it is also important to consider, that while the EPA's comments encourage due diligence, and the regulations do not absolve a good faith buyer of invalid RINs from meeting its RVO, the regulations also make it a violation subject to civil penalties to transfer an invalid RIN.[9] Even if the EPA espouses a "Buyer Beware" approach, it is aimed at compliance with the Renewable Fuel Standard and not the terms of a contract between private parties to a RIN transaction. Notably, when the EPA did discuss the potential penalties for invalid RINs, it stated that "obligated parties and RIN brokers should use good business judgment when deciding whether to purchase RINs from any particular seller and should consider including prudent business safeguards in RIN transactions, such as requiring RIN sellers to sign contracts with indemnity provisions to protect the purchaser in the event penalties are assessed because we find the RINs are invalid." 72 Fed. Reg. at 23,950. Clearly, this disclaimer indicates that the EPA allows private parties to a contract to allocate the risk of loss amongst themselves.

Furthermore, here, Plaintiff's complaint states that the Contract required the Defendant to deliver marketable and valid RINs. Although Defendant maintains the contrary, the Court must

---

[7]Defendant cites Regulation of Fuel and Fuel Additives: 2012 Renewable Fuel Standards, 77 Fed. Reg. 1320, 1345 (Jan. 9, 2012).

[8]*See* 40 C.F.R. § 80.1431(b)(2).

[9]*See* Regulation of Fuels and Fuel Additives: Renewable Fuel Standard Program, 72 Fed. Reg. 23,900, 23,950 (May 7, 2007) (explaining that "any party or parties that transfer invalid RINs may be liable for a regulatory violation for transferring the invalid RINs ... where invalid RINs are transferred and used, EPA normally will hold each party that committed a violation responsible, including both the user and the transferor of the invalid RINs").

accept Plaintiff's well-plead complaint as true on a motion to dismiss. Therefore, accepting Plaintiff's contention that valid RINs formed a basis of the bargain, Defendant's failure to deliver constitutes breach.

Defendant also argues that Plaintiff's breach of contract claim must be dismissed as there are no legally cognizable damages alleged. Defendant notes that Plaintiff resold the RINs and did not use them for its own RVO compliance. Any liability of Plaintiff to third parties (including the EPA and the parties that purchased the RINs from Plaintiff), according to the Defendant, is too remote and speculative.[10] Defendant maintains that Plaintiff's allegation that damages were suffered in excess of the jurisdictional minimum is insufficient to meet the pleading standard for a motion to dismiss. Defendant's reliance, however, on *Guidry v.Charter Commc'ns, Inc.,* 269 S.W.3d 520 (Mo. App. E.D. 2008)*,* and *Comcast of Ill. X v. Multi-Vision Elec., Inc.*, 491 F.3d. 938 (8th Cir. 2007), to support the argument that remote damages require dismissal, is misplaced. In *Guidry*, the court found the adduced evidence of damages too speculative to support the jury award of damages. 268 S.W.3d at 532-3. *Comcast* involves the review of a district court's award of damages for abuse of discretion, and stands for the proposition that the manner of calculating damages must not be too speculative or remote. 491 F.3d. at 947. *Guidry* and *Comcast* are inapposite here as they do not involve Rule 12 (b)(6) motions to dismiss. Clearly, the quantum of facts required for an award or calculation of damages differs from the amount sufficient to withstand a motion to dismiss.

Plaintiff's allegations of damages are plausible given the claim that it bought 943,515 invalid and worthless RINs. The likelihood of additional litigation by third-party purchasers, as

---

[10]Furthermore, with subsequent third-party purchasers, Defendant suggests that Plaintiff will be protected by the EPA's assignment of the risk of loss to the buyer. This argument has already been addressed above and need not be reiterated here.

well as potential liability to the EPA, supports an inference of damages. Therefore, the Plaintiff's complaint adequately states a claim for breach of contract.

### *B. Breach of Warranties*

Defendant contends that any warranty claims by Plaintiff should be dismissed due to the lack of cognizable damages. As discussed above, Plaintiff's allegation of damages in its well-plead complaint is sufficient to support a breach of contract claim, and the allegation of damages is, likewise, adequate to support a breach of express contractual warranty claim as well.

Defendant also argues that Plaintiff's warranty claims, including express warranty and implied warranty claims of "merchantability" and "fitness for a particular purpose" arising under the UCC, as adopted in Missouri, must fail as RINs are not "goods" under the UCC.[11] Article 2 of the Missouri UCC applies to the sale of goods. Goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." MO. REV. STAT. § 400.2-105 (2012). *See also Zolman v. SEMO Produce, Inc.,* 875 S.W.2d 605, 609 (Mo. App. S.D. 1994).

Defendant argues that RINs are not goods as they can be separated from the tangible fuel they represent. Once an RIN is separated, Defendant posits, it is merely a serial number like a contract or payment right, to which the UCC does not apply. Plaintiff, in contrast, argues that an RIN is a good as it has characteristics of a commodity which bring it within the UCC definition.[12]

---

[11]*See* MO. REV. STAT. § 400.2-314, 315 (2012).

[12]Plaintiff cites the Comment to MO. REV. STAT. § 400.2-105, which states that, "Goods is intended to cover the sale of money when money is being treated as a commodity but not to include it when money is the medium of payment."

9

Missouri law has not yet interpreted provision § 400.2-105 of the UCC in the context of whether a RIN is a good. The purpose behind the adoption of the UCC in Missouri is: " to simplify, clarify and modernize the law governing commercial transactions" and "to make uniform law among the various jurisdictions." *Dean Mach. Co. v. Union Bank,* 106 S.W.3d 510, 517 (Mo. App. W.D. 2003) (internal citations omitted). "[W]here there is a paucity of Missouri case law interpreting a provision of the UCC, courts of this state look for guidance to decisions of other jurisdictions made under the same provision." *Id.* (internal citations omitted). In *Lansing Trade Grp., LLC v. OceanConnect, LLC*, the U.S. District Court in the district of Kansas discussed the classification of RINs under Article 2 of the Kansas UCC as follows:

> Asking whether a RIN is a "moveable thing" is a bit of an exercise in philosophy. RINs are numbers. A RIN conforming to the regulations confers a benefit when an obligated party retires it and applies it toward the party's renewable fuel obligation. Separated RINs can be bought and sold for investment purposes as commodities. In that respect they resemble a number of other commodities—wheat, oil, gold, just to name a few—which are clearly goods under Article 2. Unlike those commodities, however, separated RINs are essentially informational rather than tangible, and they have no intrinsic value. They have value only because they confer a right to claim a fuel credit under EPA regulations. In other words, they constitute a regulatory credit—a form of intangible right.
> Even if this intangible right can be considered personal property and traded, the court concludes it does not constitute "goods" within the meaning of the UCC.

2012 WL 2449514, at *4-5 (D.Kan. June 26, 2012). The *Lansing* court also determined that "RINs are more properly categorized as choses (or things) in action, a term which refers to 'the infinite variety of contracts, covenants, and promises which confer on one party the right to recover a personal chattel or a sum of money from another by an action.'" *Id.* at *5 (internal citations omitted).

This Court similarly finds that RINs do not constitute "goods" under the Missouri UCC.

10

RINs are more properly classified as intangible rights, regulatory fuel credits, and things in action, which are excluded from § 400.2-105. RINs do possess some characteristics of commodities. Separated RINs are bought and sold for investment purposes. The Court notes that the UCC does make an exception for money, defining it as a good when it represents a commodity, and not a medium of exchange. The Official Comment to § 400.2-105, states that "foreign currency which is included in the definition of money may ... be the subject matter of a sales transaction ... [g]oods is intended to cover the sale of money when money is being treated as a commodity but not to include it when money is the medium of payment." Courts have applied Article 2 to a contract when money is the object of exchange, and a commodity, not just the medium of exchange. *United Equities Co. v. First Nat'l City Bank*, 383 N.Y.S.2d 6 (N.Y. App. Div. 1976), aff'd, 395 N.Y.S.2d 640 (N.Y. 1977); *Saboundjian v. Bank Audi (USA)*, 556 N.Y.S.2d 258 (N.Y. App. Div. 1990); *Koreag v. Refco F/X Assocs., Inc.,* 961 F.2d 341 (2d Cir. 1992). However, the commercial reality in a foreign exchange transaction, is that it is rare for parties to actually physically deliver currency. David Frisch, *Amended U.C.C. Article 2 as Code Commentary*, 11 Duq. Bus. L.J. 175, 187 (2009). Funds are typically transferred between bank accounts and each participant acquires what is essentially a foreign currency credit. *Id*.

Although courts have treated foreign currency exchanges as falling under Article 2, it may seem more appropriate to classify the electronic transfer of debits and credits as a "thing in action" and subject to exclusion. *Id*. Separated RINs, constituting regulatory credits, do not fall into a similar commodity exception. With a separated RIN, there is no possibility of a physical delivery of the corresponding fuel that was produced. With a currency exchange, the currency could be physically delivered, even though this is far afield of the reality of commercial

practice.[13]

Classification of RINs as intangible rights falling outside the scope of the UCC is consistent with the treatment accorded intangibles in other jurisdictions. *See, e.g.*, *Takisada Co., Ltd. v. Ambassador Factors Corp., a Div. of Fleet Factors Corp.*, 147 Misc. 2d 435, 556 N.Y.S.2d 788, 790 (1989) (sale and assignment of accounts receivable); *Young v. Thomas,* 785 P.2d 489, 491 (Wyo. 1990) (agreement to divide proceeds is not an agreement regarding goods); *Guaranteed Foods of Neb., Inc. v. Rison*, 299 N.W.2d 507, 511 (Neb. 1980) (membership in a food and clothing purchasing club plan is not "goods" and therefore is not governed by Article 2); *Foster v. Colo. Radio Corp.,* 381 F.2d 222, 225 (10th Cir. 1967) (granting of a radio station license is not a transaction relating to goods within Article 2 of the Code); *Sel-Lab Marketing, Inc. v. Dial Corp.,* 2002 WL 1974056 at *6 (S.D. N.Y. August 27, 2002) (right of first refusal is not a sale of goods, but rather a sale of an intangible); *Rayle v. Bowling Green State Univ.*, 108 Ohio Misc.2d 60, 739 N.E.2d 1260, 1262 (Ct. Cl. 2000) (personal seat license under which the licensee is entitled to retain his two assigned seats in the stadium was not a good and, therefore, was not governed by Article 2).

As the separated RINs at issue in the instant Contract are not goods under § 400.2-105 of the UCC, Plaintiff's breach of the implied warranty of fitness for a particular purpose and merchantability claims, as well as any express warranty claims falling under the UCC, fail to state a claim upon which relief can be granted. Defendant's Motion to Dismiss the UCC

---

[13]Note that Amended Article 2 (U.C.C. § 2-103 and § 2-105) of the Uniform Commercial Code, not yet adopted in any state, explicitly excludes from the definition of goods, foreign exchange transactions which anticipate delivery of currency through fund transfer, book entry accounting, or other agreed upon means to transfer a credit balance. Amended Article 2 does apply, however, if there is physical delivery of coins, legal tender or banknotes. *See* Frisch, *Amended U.C.C., supra*, at 188. Although not adopted in Missouri, Amended Article 2 provides some guidance for treating RINs as credits and "things in action" versus Article 2 goods.

warranty claims will be granted. On the other hand, as noted above, Plaintiff's complaint adequately alleges a breach of express contractual (non-UCC) warranty claims.

### C. Failure to Join a Required Party

Defendant argues that dismissal of the complaint for the failure to join a required party, CGF, is proper under FED. R. CIV. P. 12(b)(7) and 19. According to Defendant, as the issuer of the alleged invalid RINs, CGF must be joined under Rule 19 to avoid inconsistent obligations, afford complete relief, and to reduce the risk of additional lawsuits.[14] In contrast, Plaintiff posits that CGF is not a required party under Rule 19 as this is a contractual dispute to which CGF is not a party in privity, nor is Defendant alleging that CGF is claiming any interest in the subject matter of the litigation. Plaintiff states that complete relief can be accorded in CGF's absence. Additionally, Plaintiff notes that if seeking contribution or indemnity, Defendant is free to avail itself of a third-party claim against CGF under FED. R. CIV. P. 14.

Federal Rule of Civil Procedure 19 determines when joinder of a particular party is compulsory. A court must first determine whether a party should be joined if "feasible" under Rule 19(a), i.e., whether a person is "necessary." *Gwartz v. Jefferson Mem'l Hosp. Ass'n,* 23 F.3d 1426, 1428 (8th Cir. 1994). If the person is not necessary, then the case must go forward without him and there is no need to make a Rule 19(b) inquiry. *Id.* (internal citations omitted). Under Rule 19(a), a person "shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties." FED. R. CIV. P. 19(a)(1). Subsection (a)(1) requires joinder only when the absence of the unjoined party prevents complete relief among the current parties. *Gwartz*, 23 F.3d. at 1428. The focus is on relief between the

---

[14]Defendant acknowledges that it is feasible to join CGF because doing so would not vitiate the Court's subject matter jurisdiction. [ECF No. 9].

parties and not on the speculative possibility of further litigation between a party and an absent person." *Id*. The party moving for dismissal under Rule 12(b)(7) has the burden to show that the absent person should be joined under Rule 19. *E.E.O.C. v. Apria Healthcare Group, Inc*., 222 F.R.D. 608, 610 (E.D. Mo., 2004).

Here, the Defendant fails to show that CGF must be joined under Rule 19(a)(1). In its Reply in Support of its Motion to Dismiss or Stay the Proceedings [ECF No. 18], Defendant acknowledges that it might be the case that complete relief could be afforded in CGF's absence. Also, Defendant's allegation of the risk of additional lawsuits is not sufficient as Rule 19 protects against multiple obligations, not multiple suits. *See Kuhlmeier v. Hazelwood School Dist*., 578 F.Supp. 1286, 1293 (E.D. Mo., 1984) (noting that Defendants' contention that the risk of a multiplicity of suits against defendants makes the proposed required parties indispensable parties is meritless as Rule 19(a) protects parties against a substantial risk of multiple "obligations," not multiple suits). Neither does Defendant establish that the possibility of inconsistent obligations requires joinder. Defendant does not offer any rationale as to why it could not join CGF as a party under Rule 14. "Potential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible… [A defendant] can always protect itself from the possibility of inconsistent verdicts by impleading [the absent party] under Rule 14." *Pasco Int'l. (London) Ltd. v. Stenograph Corp*., 637 F.2d 496, 503 (7th Cir. 1980). *Accord Centric Group, LLC v. Sojitz Corp. of Am., Inc*., 2006 WL 133487, at *3 (E.D.Mo. Jan. 12, 2006). As the Defendant does not offer any reason why it is incapable of bringing CGF, whose presence it alleges is required, into the litigation, CGF cannot be deemed indispensable.[15] Therefore,

---

[15] Note that Defendant also does not maintain that CGF is unable to intervene under FED. R. CIV. P. 24.

Defendant is not entitled to dismissal under FED. R. CIV. P. 12(b)(7) for failure to join a required party.

### D. Motion to Stay the Proceedings

Defendant also moves to stay the proceedings. Initially, Defendant requested this Court stay these proceedings until the resolution of criminal proceedings against Rodney Hailey [ECF No. 9]. Then, in Defendant's Motion to Supplement its Motion to Stay [ECF No. 12], the Court was asked to stay the instant proceedings pending the outcome of OceanConnect's suit against the EPA (the "EPA Action"). In Plaintiff's Notice to Court of the Intervening Disposition of Actions [ECF No. 22], it was noticed that the Hailey criminal action concluded on or about June 25, 2012, and the EPA Action was voluntarily dismissed by OceanConnect on or about July 25, 2012. While acknowledging the disposition of these two actions, Defendant, in its Response to Plaintiff's Notice [ECF No. 23], noted that a substantially similar action (to the EPA Action) had been re-filed by OceanConnect in the United States Court of Appeals for the District of Columbia (the "Circuit Court Action"). According to Defendant, this action challenges the EPA's authority to penalize good-faith RIN purchasers and requests review of certain EPA orders. Defendant argues that the resolution of this action goes to the heart of Plaintiff's claims, but does not offer any further specific reasons why the Circuit Court Action is a basis for a stay. Nor did Defendant file a another motion to supplement its motion to stay the proceedings to include the Circuit Court Action as a basis of the stay. However, the Court will examine the reasons proffered by the Defendant in favor of a stay for the EPA Action, assuming they offer a "substantially similar" and applicable rationale for the Circuit Court Action.

Defendant argues that staying the proceedings pending the outcome of the EPA Action fall under the Court's general discretionary power to control its docket, and would streamline the

15

issues and promote judicial efficiency. Defendant notes that there are several cases pending relating to the validity of the CGF RINs [ECF No. 12], all of which turn on the EPA's administration of the Renewable Fuel Program. According to Defendant, a stay would decrease the likelihood of inconsistent judgments and reduce confusion. Defendant also argues that the doctrine of primary jurisdiction supports its Motion to Stay, as it promotes uniformity and allows the EPA agency expertise and experience to resolve an issue that is beyond the conventional experience of this Court.

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. North Am. Co.,* 299 U.S. 248, 254 (1936). However, the movant must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. *Id.* at 255. Primary jurisdiction is a common-law doctrine that allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court. *Access Telecomm. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (internal citations omitted). One reason courts apply the doctrine of primary jurisdiction is to obtain the benefit of an agency's expertise and experience. *Id*. Another reason is to promote uniformity and consistency within the particular field of regulation. *Id*. *But see United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir. 1984) (stating that a court should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants where the nature of the action deems the application of the doctrine inappropriate).

Here, primary jurisdiction factors of uniformity and deference to agency expertise do not

favor a stay when balanced against delaying the right of Plaintiff to prosecute its claims. Questions regarding the validity and issuance of penalties relating to the RINs do not mandate the special expertise of an agency to resolve. Defendant has not offered sufficient grounds to establish that the conventional wisdom of the court is inadequate. Furthermore, the EPA has already issued a final ruling on the validity of the RINs. Also, the current challenge, the Circuit Court Action, as well as the former EPA Action, were filed in Article III courts. Although noting the discretion of the Court to control its docket, Defendant has failed to make out a clear case of hardship or inequity to overcome the need to resolve this litigation expeditiously. Therefore, the Motion to Stay is denied.

**IV.     CONCLUSION**

Defendant's Motion to Dismiss or Stay is granted, in part and denied, in part. The Motion is granted as to the Count II UCC warranty claims (UCC express and implied warranty claims of fitness for a particular purpose and merchantability). Those claims are dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Motion to Dismiss is denied as to Count I, the breach of contract claim. The Motion to Dismiss for failure to join a required party and the Motion to Stay are also denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim and for Failure to Join a Required Party and Alternatively, to Stay the Proceedings [ECF No. 8]is **GRANTED, in part** and **DENIED, in part.** Defendant's Motion to Dismiss is granted with respect to the request that the breach of UCC warranty claims, contained in Count II of the Plaintiff's Complaint, be dismissed, and is otherwise denied.

Dated this ___2ND___ day of October, 2012.

*[signature]*
UNITED STATES SENIOR DISTRICT JUDGE